UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

SARAH WILLIAMS,

    Plaintiff

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE

    Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, SARAH WILLIAMS, hereby sues the Defendant and files this Complaint for Damages and says:

### THE PARTIES AND JURISDICTION

1. This is an action for damages that exceed $75,000 exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF.** The Plaintiff, SARAH WILLIAMS, is sui juris and is a resident of Tampa, Florida.

3. **THE DEFENDANT**. The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL or Defendant or the cruise line), is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

1

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

> (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and or
>
> (b) Had an office or agency in this state and/or county; and/or
>
> (c) Engaged in substantial activity within this state; and/or
>
> (d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF THE INCIDENT**. The incident occurred on June 4, 2017.

8. **LOCATION OF THE INCIDENT.** The incident occurred onboard the vessel CARNIVAL *Liberty*, a ship in navigable water while the Plaintiff was a passenger onboard.

Accordingly, the Plaintiff's claims are governed by the general maritime law. Specifically, the Plaintiff's incident occurred on the Lido Deck.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

10. **DESCRIPTION OF THE INCIDENT**. Carnival custom built the Carnival *Liberty* cruise ship in a shipyard in Italy. The Carnival *Liberty* is a cruise ship which Carnival had custom built to specifications and designs which were made by or under the supervision and participation of Carnival. The *Liberty* was designed by or at the direction of the New Build Department of Carnival. That department employs architects, designers, and engineers. The hull and the interior of the ship was built in Italy at a shipyard under the constant supervision of Carnival's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, Carnival has not only full access to the ship to inspect, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. That includes the raised threshold which caused this fall and these injuries.

11. The *Liberty* was delivered to Carnival as finished on July 19, 2005. Carnival has operated and maintained the ship continuously since that time. The Carnival *Liberty* is a part of the Conquest Class which includes the Carnival *Conquest*, Carnival *Glory*, Carnival *Valor*, Carnival *Liberty*, and Carnival *Freedom*. The Conquest class is the same design as the Destiny class of ships with the modification only that the Conquest class was lengthened, and the facilities are expanded. Most of the facilities of the Conquest and Destiny class ships are identical to each other. The Destiny Class includes the Carnival *Sunshine*, the Carnival *Triumph*, and the Carnival *Victory*. Carnival has operated and maintained the other ships in Conquest and Destiny classes, listed above, continuously since the time when each of those ships were first built and put into

service. And Carnival also custom built to specifications and designs which were made by or under the supervision and participation of Carnival all of the Conquest and Destiny class ships, listed above. The design and construction of these ships was under the supervision and with the participation of Carnival personnel who were stationed onsite in the shipyard during construction.

12. The Lido deck on all Carnival ships, including the Carnival Liberty, is the main gathering place for passengers. This is the deck with pools and spas, the deck where Carnival organizes games and holds concerts, and is the main eating and drinking deck for passengers on all of the Carnival ships. As if that were not enough, it is a deck across which passengers walk to get from one end of the ship to the other. Because of all of this activity on all Lido Decks on all Carnival ships, Carnival knows that it is important to keep this deck clean and dry at all times, to actively inspect for puddles or spills and to clean and dry them, and to do what it takes to prevent slips and falls.

13. Yet, Carnival has chosen to install on all of its Lido decks a resin flooring which can be extremely slippery when wet. Carnival had chosen untreated teak for these decks but to save money in maintenance chose the resin flooring. This resin flooring, on all Carnival ships, is manufactured by an Italian or related U.S. company and installed and repaired by an Italian or related U.S. company. The Italian and U.S. companies are associated by ownership by a company which is headquartered in the U.S.

14. The outdoor decks above the Lido on all Carnival ships, that is, Veranda, Promenade, and Sun decks are part and parcel of the Lido deck and its activities. Those other decks are tiered so that when a passenger is on the Lido deck he or she can see those upper decks and passengers on them. And passengers access these upper decks by outdoor stairs from the Lido deck. These upper decks are made of the same flooring material as the Lido deck.

15. Carnival knows from years of experience with this flooring and multiple other slip and falls on this same type of flooring on all of its ships that the resin flooring of the outdoor decks including the Lido decks of its ships are slippery when wet. Yet Carnival fails to inspect with sufficient regularity, fails to clean and dry with sufficient regularity, fails to block off wet and slippery parts of the deck, and fails to warn with sufficient signage.

16. The Carnival *Liberty* has the capacity to carry 2,974 passengers. The Lido deck on this ship is the same as the other ships, laid with resin flooring. On June 4, 2017, CARNIVAL allowed the outdoor portion of the Lido deck including but not limited to the area where this fall occurred to accumulate water and remain in a wet and unsafe condition. The wet area accumulated near a utility cart placed on the Lido deck by CARNIVAL. CARNIVAL knows that it uses utility carts to hold ice that is used at its pool deck bar to serve drinks to passengers. Carnival allowed its utility cart used to store ice to malfunction and/or leak water and/or condensate onto the Lido deck floor. Carnival allowed this water to accumulate making the wet floors slippery in areas around the Lido deck bar located next to an open walkway for passengers to move throughout the deck. That water accumulated over a long time such that CARNIVAL knew or certainly should have known about it. Despite the fact that CARNIVAL knew or should have known that the floor on the Lido deck was a potential hazard, CARNIVAL did not clean or dry the area, place caution or slippery when wet cones/signs, or cordon or block off the wet area.

17. As a result of these unsafe conditions, passenger Sarah Williams when walking on the Lido deck of the Liberty slipped and fell and suffered severe and permanent injuries. Williams suffered on her left knee alone a horizontal displaced traversed fracture of the patella (knee cap) with incompetent extensor mechanism (injury caused by acute trauma to the quadriceps muscle group, quadriceps tendon, patella, patellar retinaculum, patellar ligament, and adjacent soft tissues) which required surgery which was an open reduction (open surgery) with internal fixation

(permanent insertion of hardware consisting of two lag screws and a tension band with FiberTape through the screws). Even after successful treatment, likely complications and long term effects of patellar fractures include posttraumatic arthritis, chronic pain, muscle weakness of the quadriceps, and loss of motion in the knee in both extension and flexion.

## COUNT I: NEGLIGENCE

18. The Plaintiff, SARAH WILLIAMS, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 17, above.

19. This is an action for negligence. CARNIVAL has a reasonable duty of care under the circumstances to provide and otherwise maintain its floors and passageways in a safe condition, especially the floors and passageways on the Lido deck and in its restaurants. The circumstances are that Carnival owns and/or manages more than twenty (20) cruise ships, including the Carnival *Liberty*. Carnival has a Lido deck on each of its cruise ships—the deck on which the pool and other amenities, like bars and utility carts are located. CARNIVAL knows that this deck and the Lido deck bars are extremely high traffic areas. For that reason, CARNIVAL knows that it is extremely important to mop, clean, dry, and otherwise maintain the floors in a safe condition due to the significant amount of passenger traffic. CARNIVAL also knows it must inspect the decks of the ship on a regular basis to prevent slippery and dangerous conditions, especially on its floors in and around restaurants and food stations on the Lido deck. Therefore, CARNIVAL's duty of care includes inspecting and cleaning up water and/or spills on the floors in and around bars and the pool on the Lido deck on a regular basis.

20. CARNIVAL knew or should have known of the dangerous, slippery, condition existing on the Lido deck on June 4, 2017 for several reasons. First, CARNIVAL operates many Lido decks which include bar facilities, utility carts and/or pools onboard the Carnival *Liberty* and its other ships. CARNIVAL knows that passengers including those who enter the pools and/or

6

showers frequently traverse throughout the Lido deck causing water to accumulate and/or food and beverage to spill.  CARNIVAL knows that spills and/or the accumulation of water is a frequent occurrence and results in the build-up of slick conditions on its floors, especially in the high traffic environment of the Lido deck where passengers gather throughout the Lido deck. CARNIVAL knows that its utility carts which CARNIVAL puts on its Lido decks used to hold ice leak, spill, condensate and/or malfunction causing water to accumulate on its floors.  Thus, CARNIVAL knows that if these areas are not regularly inspected, cleaned, and dried, it can result in the accumulation of dangerous, slick conditions on the floor.  Second, CARNIVAL knows that the Lido deck floors are a high traffic areas where water gathers or slick conditions occur frequently. Third, CARNIVAL knows from prior similar incidents on the flooring featured on the Lido deck that this type of flooring becomes unreasonably slick when wet and causes people to fall. CARNIVAL knows this because of beverage spills, utility cart malfunctions and/or leaks and/or condensation and water left behind by passengers result in repetitive, slick conditions on the floors. Fourth, Carnival cleans and mops the area. From that mopping, Carnival knows that spills and water accumulation occur on a regular basis creating a hazard for anyone traversing on the Lido deck. Because CARNIVAL cleans and mops with greasy, dirty water, the cruise line also knows that any foreign substance on the floor can easily spread if the area is not adequately dried and cordoned off with warning signs visibly posted after cleaning.  Fifth, Carnival placed a warning sign but not in the area where the Plaintiff fell.  The cruise line placed its warning sign in a location where it could not be seen by the Plaintiff or by any other reasonable passenger before encountering the slick condition on the floor.  Thus, Carnival knew there was a dangerous condition on the floor, but failed to properly warn passengers, including the Plaintiff, of the danger.

21. CARNIVAL either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

22. CARNIVAL had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition, including that the condition existed inside the fitness center and observed by Carnival crewmembers; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care CARNIVAL should have known about it.  And Carnival is guilty of negligent maintenance.

23. CARNIVAL breached the reasonable care under the circumstances standard by failing to properly clean and dry a wet and slippery walking surface on the Lido deck; by allowing the floor to remain in a wet, dangerous, and/or unsafe condition for an unreasonable, extended period of time; by failing to inspect for wet and slippery conditions on the floor on the Lido deck, a high traffic area where passengers and staff often spill beverages and/or where water drips and accumulates on the surface of the deck and/or utility carts leak, spill, condensate and/or malfunction causing water to accumulate on the surface of the deck; by failing to adequately warn passengers of the slippery and dangerous condition of the subject area, and/or block or cordon it off; by cleaning and mopping with dirty, greasy water which spread the substance on the floor and made it slippery; by allowing an ongoing, repetitive, continuous, and/or recurring problem to occur or to remain on or around the subject area which would cause incidents or injuries; by failing to comply with CARNIVAL's own standards on cleaning, warning, and making safe its floors; and by failing to otherwise make safe the floor on the Lido deck on June 4, 2017.

24. These breaches of CARNIVAL's reasonable duty of care under the circumstances proximately caused this incident and the injuries suffered by the Plaintiff. On June 4, 2017, the Plaintiff walked on the Lido deck on the CARNIVAL *Liberty*. Because CARNIVAL allowed a wet and slick condition to remain on the Lido deck floor for an unreasonable time, the Plaintiff slipped and fell. The Plaintiff slipped and fell without advance knowledge of the hidden, wet, and slippery condition on the floor. The wet area created and/or allowed to remain on the floor by CARNIVAL caused the Plaintiff to slip, fall, and suffer serious injuries. Those injuries include but are not necessarily limited to a debilitating a horizontal displaced traversed fracture on patella which required a surgical open reduction with internal fixation. These injuries required and continue to require significant treatment and future surgeries.

25. The Defendant's negligence proximately caused the aforementioned injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past, and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in

the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By: *s/ John H. Hickey*
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**SARAH A. LOBEL, ESQ.** (FBN 88716)
slobel@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*